UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **ALLSTATE INSURANCE COMPANY** : | |
|     **Plaintiff** : | **CIVIL ACTION NO.** |
| : | **3:12-cv-01566(VLB)** |
| **v.** : | |
| : | |
| **IWONA SUCHECKI, PPA P.S.** : | **February 20, 2014** |
|     **Defendant.** : | |

**MEMORANDUM OF DECISION GRANTING**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [Dkt. 15]**

**I.     Introduction**

The Plaintiff, Allstate Insurance Company ("Allstate"), brings this declaratory judgment action against Defendant, Iwona Suchecki ("Suchecki"), seeking to avoid defending the Defendant in an underlying civil action brought in Connecticut State Court.  The Plaintiff has moved for summary judgment pursuant to Fed. R. Civ. P. 56, asserting that there are no issues of material fact in dispute and that the claims can be decided as a matter of law.  For the following reasons, the Plaintiff's motion for summary judgment is GRANTED.

**II.     Background**

Allstate insured the Defendant and her minor son, P.S., under an Allstate Deluxe Plus Homeowners Policy numbered 9 19 922684 08/25 (the "Policy").  [Dkt. 15-1, Local Rule 56(a)1 Statement of Material Facts in Support of Motion for

1

Summary Judgment, ¶ 1; Dkt. 22, Defendant's Response to Plaintiff's Local Rule 56(A)(1) Statement, ¶ 1]. The policy period began on August 25, 2010 and the premium period was from August 25, 2010 to August 25, 2011. [Dkt. 15-1, ¶ 2; Dkt. 22 ¶ 2]. A civil complaint, dated February 1, 2012, was filed in the Connecticut Superior Court, Judicial District of Hartford, and was assigned docket number HHD-CV12-5036046-S ("hereinafter referred to as the "Doe Action" or "Doe Complaint"), naming as defendants P.S. and his parents. [Dkt. 15-1, ¶ 3; Dkt. 22, ¶ 3]. The Doe Complaint was brought by John Doe in his capacity as parent and next friend of his daughter, Jane Doe, a minor plaintiff. [Dkt. 15-1, ¶ 4; Dkt. 22, ¶ 4]. The Doe Complaint alleges that on March 24, 2011, the minor defendant, P.S., and two other minor defendants were at Jane Doe's mother's house and supplied Jane Doe with alcohol and marijuana in great enough quantities to cause her to become intoxicated and/or impaired. [Dkt. 15-1, ¶¶ 7, 8; Dkt. 22, ¶¶ 7, 8]. While inebriated, the complaint alleges that the three minor defendants removed Jane Doe's clothing, fondled her breasts, and attempted to insert their genitalia into Jane Doe's mouth. [Dkt. 15-1, ¶ 9; Dkt. 22, ¶ 9]. As a result of the sexual assault, Jane Doe suffered emotional damage and a corneal hemorrhage. [Dkt. 15-1, ¶ 10; Dkt. 22, ¶ 10].

The Doe Complaint contains nineteen counts, including, as to the Defendant and her minor son, sexual assault claiming that P.S. "willfully and purposefully sexually assaulted the minor plaintiff," battery claiming that P.S. "intended to touch or otherwise cause contact with the minor plaintiff in an offensive and

2

harmful manner," invasion of privacy claiming that P.S. "intentionally and physically intruded on the minor plaintiff's person," negligent infliction of emotional distress claiming that P.S. "created an unreasonable risk of causing the minor plaintiff to experience emotional distress," and negligent supervision as to the Defendant and her husband for the actions of P.S. [Dkt. 15-5, Doe Complaint, p. 5, 8, 10, 16, 20, 21]. The Doe Complaint seeks monetary damages and costs from the Defendant. [Dkt. 15-1, ¶ 6; Dkt. 22, ¶ 6]. P.S. has denied all of the claims in the Doe Action and avers that he was not present when the sexual assault occurred. [Dkt. 23, Defendant's Local Rule 56(a)(1) Statement, ¶¶ 8, 9, 10].

Allstate is currently providing a legal defense to the Defendant under a full reservation of rights and defenses under the Policy. [Dkt. 15-1, ¶ 31; Dkt. 22, ¶ 31]. The Policy provides, in relevant part:

> *Definitions used in this Policy*
>
> 1. "Insured Person" means you and, if a resident of your household:
>    a) any relative; and
>    b) any dependent person in your care.
>
> * * * *
>
> 5. "Bodily injury" means physical harm to the body including sickness or disease, and resulting death.
>
> * * * *
>
> 9. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, during the policy period, resulting in bodily injury or property damage.
>
> * * * *

3

**Section II- Family Liability and Guest Medical Protection**

**Coverage X**

**Family Liability Protection**

*Losses We Cover Under Coverage X:*

> **Subject to the terms, conditions and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy.**

* * * *

*Losses We Do Not Cover Under Coverage X:*

> **1. We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, an insured person. This exclusion applies even if:**
>
> > **a) such bodily injury or property damage is of a different kind or degree than intended or reasonably expected; or**
> >
> > **b) such bodily injury or property damage is sustained by a different person than intended or reasonably expected.**
>
> **This exclusion applies regardless of whether or not such insured person is actually charged with, or convicted of a crime.**

* * * *

> **7. We do not cover bodily injury or property damage arising out of:**
>
> > **a) the negligent supervision by an insured person of any person**

* * * *

4

**Coverage Y**

**Guest Medical Protection**

*Losses We Cover Under Coverage Y:*

> **Allstate will pay the reasonable expenses incurred for necessary medical, surgical, x-ray and dental services; ambulance, hospital, licensed nursing and funeral services; and prosthetic devices, eye glasses, hearing aids, and pharmaceuticals. These expenses must be incurred and the services performed within three years from the date of an occurrence causing bodily injury to which this policy applies, and is covered by this part of the policy.**
>
> **Each person who sustains bodily injury is entitled to this protection when that person is:**
>
> **1. on the insured premises with the permission of an insured person**
>
> \* \* \* \*

*Losses We Do Not Cover Under Coverage Y:*

> **1. We do not cover any bodily injury intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, an insured person. This exclusion applies even if:**
>
>> **a) such a bodily injury is of a different kind or degree than that intended or reasonably expected; or**
>>
>> **b) such bodily injury is sustained by a different person than intended or reasonably expected.**
>
> **This exclusion applies regardless of whether or not such insured person is actually charged with, or convicted of a crime.**
>
> \* \* \* \*
>
> **7. We do not cover bodily injury or property damage arising out of:**

5

      **a) the negligent supervision by an insured person of any person**

[Dkt. 15-3, the Policy].  The Plaintiff now moves for summary judgment arguing that there are no material facts in issue that would prevent the Court from ruling as a matter of law on the declaratory judgment action.

    **III.    Legal Standard**

**Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of proving that no factual issues exist.  *Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir. 2010).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986)).  "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied."  *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH,* 446 F.3d 313, 315–16 (2d Cir. 2006) (citations and internal quotation marks omitted).**

**"A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere**

6

assertions that affidavits supporting the motion are not credible.  At the summary judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient."  *Welch–Rubin v. Sandals Corp.,* No. 3:03cv481(MRK), 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (citations and internal quotation marks omitted); *Martinez v. State of Connecticut*, No. 3:09cv1341(VLB), 2011 WL 4396704 at *6 (D. Conn. Sept. 21, 2011).  Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie.  *Fincher v. Depository Trust and Clearance Co.*, 604 F.3d 712, 720 (2d Cir. 2010).

### A.  Insurance Contract Interpretation

To rule on the issues presented in the Plaintiff's motion for summary judgment, the Court will need to interpret various contractual terms in the Policy.  The parties agree that Connecticut law governs the Policy, so this Court will apply Connecticut law without addressing the issue.

"Insurance policy words must be accorded their ordinary and natural meaning, and any ambiguity in the terms of the policy must be construed in favor of the insured."  *Elec. Ins. Castrovinci*, No. 3:02cv1706(WWE), 2003 WL 23109149, at *3 (D. Conn. Dec. 10, 2003) (citing *Hansen v. Ohio Cas. Ins. Co.*, 239 Conn. 537, 542 (1996)).

7

> **"An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract . . . . In accordance with those principles, [t]he determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provision of the policy . . . . If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning."**

*New London Cnty. Mut. Ins. Co. v. Bialobrodec*, 48 A.3d 742, 746 (Conn. App. 2012) (quoting *Lancia v. State Nat'l Ins. Co.*, 41 A.3d 308, 312, *cert. denied*, 305 Conn. 904, 44 A.3d 181 (2012)).  Furthermore, "[t]he question of whether an insurer has a duty to defend its insured is purely a question of law. . . . In construing the duty to defend as expressed in an insurance policy, [t]he obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage." *Id.* (citations and internal quotation marks omitted).  Accordingly, "it necessarily follows that the insurer's duty to defend is measured by the allegations of the complaint."  *Id.* (citations and internal quotation marks omitted); *see also Truck Ins. Exch. v. Mager*, No. 3:06cv1058(WWE), 2007 WL 3119531, at *2 (D. Conn. Oct. 22, 2007) ("The facts alleged in the underlying complaint determine whether an insurer is obligated to defend or indemnify." (citing *Flint v. Universal Mach. Co.*, 238 Conn. 637, 646, 679 A.2d 929 (1996)).

"[T]o prevail on its own motion for summary judgment for a declaratory judgment that it has no duty to defend in the underlying action, the insurer must

8

establish that there is no genuine issue of material fact either that no allegation of the underlying complaint falls even possibly within the scope of the insuring agreement or, even if it might, that any claim based on such an allegation is excluded from coverage under an applicable policy exclusion." *New London Cnty. Mut. Ins. Co.*, 48 A.3d at 745-46 (citations and internal quotation marks omitted). Moreover, "[i]n contrast to the duty to defend, the duty to indemnify is narrower: while the duty to defend depends only on the allegations made against the insured, the duty to indemnify depends upon the facts established at trial and the theory under which judgment is actually entered in the case." *DaCruz v. State Farm Fire and Cas. Co.*, 846 A.2d 849, 858 (Conn. 2004) (citations and internal quotation marks omitted). "Thus, the duty to defend is triggered whenever a complaint alleges facts that *potentially* could fall within the scope of coverage, whereas the duty to indemnify arises only if the evidence adduced at trial establishes that the conduct actually was covered by the policy." *Id.* (citations and internal quotation marks omitted). Importantly, "[b]ecause the duty to defend is significantly broader than the duty to indemnify, where there is no duty to defend, there is no duty to indemnify." *Id.* (citations and internal quotation marks omitted).

      The Plaintiff makes two arguments in support of its motion: first, it claims that the alleged assault at issue in the civil case is not an "occurrence" as defined in the Policy and, therefore, not covered by the Policy; and second, it

9

argues that even if the assault in the civil case was an occurrence, it was excluded from coverage because it was intentional in nature.

> 1. Whether the Incident was an Occurrence as Defined in the Policy

The Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, during the policy period, resulting in bodily injury or property damages." The Plaintiff argues that the facts in the Doe Complaint allege intentional conduct, which, by definition, is not accidental, and, therefore, is not covered by the Policy.

Since an occurrence is an "accident" it necessarily means that to be an "occurrence," the action cannot be intended. Indeed other courts have held that "[w]here the terms of the policy provide that coverage is triggered by an 'occurrence' that is defined as an 'accident,' coverage does not extend to an insured's intentional torts." *Truck Ins. Exch. v. Cherie Spada, Alison Yering*, 3:06CV1060(AVC), 2007 WL 2071629, at *3 (D. Conn. July 16, 2007); see also *Middlesex Ins. Co. v. Mara*, 699 F. Supp. 2d 439, 459 (D. Conn. 2010) ("The true basis for the action is Mara's many intentional acts of intimidation and harassment. These acts were not by any means accidental, i.e., 'occurrences' as defined in the policy."). The Supreme Court has also held that the "term 'accident' is to be construed in its ordinary meaning of an 'unexpected happening.'" *Commercial Contractors Corp. v. Am. Ins. Co.*, 202 A.2d 498, 504 (Conn. 1964). Therefore, "occurrence" as defined in the Policy does not include intentional torts or other intended actions.

10

**In *Allstate Ins. Co. v. Campagna*, this Court held that a nearly identically worded policy did not require the insurance company to defend the insured in an underlying action alleging negligence, negligent infliction of emotional distress, battery, and intentional infliction of emotional distress stemming from a physical altercation initiated by the insured. *Allstate Ins. Co. v. Campagna*, No. 3:07cv00098(VLB), 2008 WL 4000564, at \*1 (D. Conn. Aug. 27, 2008). Even though the plaintiff in the underlying civil matter alleged negligent as well as intentional causes of action, the Court noted that "[t]he same conduct [cannot] reasonably be determined to have been both intentionally and negligently tortious . . . . [I]ntentional conduct and negligent conduct, although differing only by a matter of degree . . . are separate and mutually exclusive." *Id*. at \*3 (quoting *DaCruz*, 846 A.2d at 861). The Court held that there were no facts alleged in the complaint that showed that the insured's conduct was negligent, instead, the beating, which was alleged to have been done "intentionally, willfully, wantonly and maliciously," was purposefully done and merely invoking the label "negligence" in a complaint is insufficient to render the conduct at issue unintentional. *Id.***

**Similarly, in *Middlesex Ins. Co. v. Mara*, the court held that the insurance company had no duty to defend the insured in an underlying civil action in which he was alleged to have committed a series of intimidating and harassing behaviors resulting in both intentional-based claims, such as intimidation and invasion of privacy, and negligent-based claims, such as negligent infliction of emotional distress, because the policy excluded protection for intentional**

**11**

conduct.  *Middlesex Ins. Co.,* 699 F. Supp. 2d at 442.  The court held that each count in the complaint was based on the insured's "intentional actions, falling outside the coverage of" the policy.  *Id.* at 453.  "Moreover, the Ninth Count, although captioned as 'negligent infliction of emotional distress,' is actually based on a series of intentional, patently harmful acts" set forth elsewhere in the complaint.  *Id.*  Accordingly, the complaint only alleged intentional conduct, conduct that was not protected by the policy.  *Id.; see also United Nat. Ins. Co. v. Tunnel, Inc.,* 988 F.2d 351, 354 (2d Cir. 1993) (affirming summary judgment for an insurance company in a declaratory judgment action because a claim for battery in New York could not be turned into a claim for negligence).

Here, the Doe Complaint alleges that after supplying the underlying plaintiff with alcohol and drugs, the Defendant's minor son with two other defendants "removed the minor plaintiff's clothing . . . [and] fondled the minor plaintiff's breasts and attempted to insert their genitalia into the minor plaintiff's mouth." [Dkt. 15-5, ¶¶ 11-12].  Furthermore, "after causing the minor plaintiff to become intoxicated and/or impaired, [the defendants] sexually assaulted the minor plaintiff … [resulting] in a corneal hemorrhage."  *[Id.* at ¶ 13].  The complaint alleges several counts against the Defendant's son, including for sexual assault, alleging that P.S. "willfully and purposefully sexually assaulted the minor plaintiff," for battery, alleging that P.S. "intended to touch or otherwise cause contact with the minor plaintiff in an offensive and harmful manner," and for invasion of privacy, alleging that P.S. "intentionally and physically intruded on

12

the minor plaintiff's person." [*Id.* at p. 5, 8, 10]. Even though the plaintiff added counts for negligent infliction of emotional distress and negligent supervision, it is clear from the factual predicate underlying the case that the conduct alleged was intentional. Therefore, merely alleging a negligent cause of action is insufficient to render the conduct at issue accidental.

The Defendant argues that even though the complaint in the underlying action alleges intentional conduct, the Defendant denies those allegations. However, as correctly admitted by the Defendant, "[t]he question of whether an insurer has a duty to defend its insured is purely a question of law, which is to be determined by comparing the allegations of [the] complaint with the terms of the insurance policy." [Dkt. 21, Defendant's Memorandum of Law in Opposition of Plaintiff's Motion for Summary Judgment, p. 7 (quoting *Wetland v. Am. Equity Ins. Co.*, 267 Conn. 592 n.7, 840 A.2d 1158 (2004))]. Therefore, the Defendant's valid defense is of no concern at this juncture. Furthermore, even though sexual assault involving two minors does not necessarily require intent to engage in the conduct as an element of the offense in Connecticut, the complaint clearly alleges that the actions by P.S. and his co-defendants were intentional. Therefore this Court is not determining whether P.S. actually acted with intent, as the Defendant correctly argues is inappropriate on summary judgment, but is comparing the allegations in the complaint and the coverage under the Policy. Since it is the complaint that controls, the allegations are sufficient to exclude the actions from the definition of "occurrence" in the Policy.

13

**Even though this Court need not delve further into the record because the complaint clearly alleges intentional conduct, reviewing the deposition transcript of P.S. also shows that even though he denies the allegations, he was in fact present for at least part of the assault.  P.S. was asked if he "touch[ed] her breasts?"  He responded, "Yes."  [Dkt. 21-5, Deposition Transcript of P.S. dated April 11, 2013, 18:9-10].  Therefore, it is clear that even looking at the defenses planned in the underlying civil suit, the Defendant's son admitted to at least partial commission of the underlying offenses.**

**Finally, the Defendant argues that even if several of the counts in the complaint are excluded from the Policy since they are based on intentional conduct, the complaint also includes allegations of negligent conduct, which triggers the Policy's coverage.  However, as discussed above, "merely describing an action in terms of 'negligence' is of no consequence when the action itself 'can only be deemed intentional.'"  *Middlesex Ins. Co.*, 699 F. Supp. 2d at 457 (quoting *Middlesex Mut. Assur. Co. v. Rand*, No. CV9576644, 1996 WL 218698, at \*2 (Conn. Sup. April 4, 1996)).  "In other words, '[a] plaintiff by describing his or her cat to be a dog, cannot simply by that descriptive designation cause the cat to bark.'"  *Id.*  Therefore, since the factual allegations underlying the civil complaint are ones of intentional conduct, not accidental, the Plaintiff has no duty to defend the Defendant in this action.  Furthermore, since the duty to defend "is much broader than the duty to indemnify . . ., [i]t thus follows that where no duty to defend exists, there is no duty to indemnify."  *Id.* (citations and**

14

internal quotation marks omitted). Accordingly, Allstate has no duty to indemnify the Defendant in this action either.

### 2. Intentional Conduct is Excluded

The Policy also explicitly excludes from coverage "any bodily injury or property damage intended by, or which may reasonably be expected to result from, the intentional or criminal acts or omissions of, an insured person . . . [even if the harm] is of a different kind or degree than that intended or reasonably expected . . . [r]egardless of whether or not such insured person is actually charged with, or convicted of a crime." [Dkt. 15-1, ¶ 32; Dkt. 22, ¶ 32]. The Doe Complaint alleges that P.S.'s actions were done willfully and intentionally. The Supreme Court has held that in Connecticut, "[w]ilful [sic] misconduct is intentional misconduct, and wanton misconduct is reckless misconduct, which is the equivalent of wilful [sic] misconduct." *Dubay v. Irish*, 542 A.2d 711, at n.8 (Conn. 1988) (citations and internal quotation marks omitted). Therefore, even though all intentional actions might not be willful, all actions alleged to have been willful must by definition be intentional. In this case, the Doe Complaint alleges that P.S. acted willfully, purposefully, and intentionally in all of the counts related specifically to him. While the Defendant is correct in pointing out that "in this state an actionable assault and battery may be one committed wilfully [sic] or voluntarily, and therefore intentionally; one done under circumstances showing a reckless disregard of consequences; or one committed negligently," Jane Doe alleged facts showing that the battery in the complaint is the intentional kind, not

15

one showing reckless disregard of consequences or negligence.  *Markey v. Santangelo*, 485 A.2d 1305, 1307 (Conn. 1985).  Specifically, she alleged that P.S. "intended to tough or otherwise cause contact with the minor plaintiff in an offensive and harmful manner."  [Dkt. 15-5, p. 8].  Accordingly, for the same reasons discussed above, the conduct is excluded from coverage because it was intentional.  Therefore, the Plaintiff is relieved from any duty to defend or indemnify.

IV.   Conclusion

For the foregoing reasons, Plaintiff's [Dkt. 15] Motion for Summary Judgment is GRANTED.


IT IS SO ORDERED.

                                                      /s/
                                    Hon. Vanessa L. Bryant
                                    United States District Judge

Dated at Hartford, Connecticut: February 20, 2014